UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

Alabama Insurance Exchange, Inc., )
    Plaintiff(s); )
)
-vs.- )   No. CV 97-P-661-S
)
Exsorbet Industries, Inc., et al., )
    Defendant(s). )

FILED 98 MAR 30 AM 10: 26 U.S. DIST. COURT N.D. OF ALABAMA

ENTERED MAR 31 1998

Opinion

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer were considered at oral argument on October 7, 1997. For the reasons stated below, Defendants' motion is due to be GRANTED.

Statement of Facts[1]

This action arises out of a dispute between Alabama Insurance Exchange ("AIE") and Consolidated Eco-Systems, Inc. ("CESI") concerning AIE's preparation of a plan of insurance coverage for CESI and several of its subsidiaries.[2] AIE is an Alabama corporation with its principal place of business in Shelby County, Alabama. CESI is an Idaho corporation with its primary place of business in Jackson, Mississippi.

In late 1996, AIE contacted CESI in Mississippi, offering to serve as CESI's broker in negotiating CESI's various insurance policies. AIE representatives traveled to CESI's Jackson headquarters during the last week of November 1996 to meet with Dr. Edward Schrader, CESI's

---

1. This recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiffs.

2. For purposes of convenience, this opinion refers to CESI and its various subsidiaries collectively as "CESI."

1

president. In connection with the meeting, AIE provided CESI with draft "broker of record" letters, which AIE needed in order to negotiate with insurers on CESI's behalf. In December 1996, CESI executives sent three such broker of record letters to AIE in Alabama. The letters appointed AIE as CESI's exclusive agent for purposes of negotiating various categories of insurance coverage. Each letter agreement provided that it was irrevocable but would expire by its own terms on May 1, 1997.

During December 1996 and January 1997, AIE investigated the insurance options available to CESI and developed an insurance plan for presentation to CESI management. Following AIE's presentation of its proposal to CESI at a meeting in Jackson on January 9, 1997, CESI management notified AIE that CESI was rescinding the broker of record letter agreements. AIE subsequently learned that CESI had contacted a Mississippi insurance brokerage, Robinson Julienne & Bailey, Inc. ("RJ&B"), to assist CESI in obtaining insurance coverage.

AIE filed this action against CESI and its subsidiaries on February 10, 1997, in the Circuit Court of Jefferson County, alleging breach of contract, quantum meruit, conversion, promissory fraud, conspiracy to defraud and, as to RJ&B and CESI vice-president Vick, intentional interference with a business contract. Defendants subsequently removed the action to this court. CESI and RJ&B filed the present motion to dismiss for lack of personal jurisdiction in April 1997.

## Analysis

In their motion pursuant to Federal Rule of Civil Procedure 12(b)(3), CESI and RJ&B argue that they have insufficient contacts with Alabama to be subject to suit in this state. In the alternative, defendants request that the court transfer the action to the Southern District of Mississippi pursuant to 28 U.S.C. section 1404(a). In opposition, AIE argues that, because CESI

sent signed letter agreements to AIE in Alabama and was aware that AIE's efforts on CESI's behalf would be performed in Alabama, CESI has established minimum contacts with Alabama sufficient to support personal jurisdiction. AIE also opposes defendants' motion to transfer this action to Mississippi, arguing that such transfer would simply shift the inconvenience from defendants to plaintiff.

In reviewing the materials submitted by the parties, the court has concluded that the facts of this case are remarkably parallel to the facts of *Barnstone v. Congregation Am Echad*, 574 F.2d 286 (5th Cir. 1978).[3/] In that case, a Maine congregation contacted Barnstone, a Texas architect, concerning the design and construction of a new synagogue to be built in Maine using funds donated by Barnstone's aunt. *Id.* at 287. Barnstone traveled to Maine to make a presentation to the congregation. During his visit, the congregation awarded Barnstone the design contract. Thereafter, Barnstone performed all related services in connection with the synagogue project at his office in Houston, Texas. *Id.* One year later, following solicitation of bids for construction of the synagogue, the congregation terminated its agreement with Barnstone and refused to pay the balance of Barnstone's fees. *Id.* Although no written contract establishing the terms of the agreement was signed by both parties, Barnstone did send a signed standard form contract to the congregation, and the congregation returned the contract to Barnstone without signature. *Id.* No member of the congregation ever traveled to Texas to meet with Barnstone, and all communication between the parties were either conducted in Maine or by telephone or mail. *Id.* When Barnstone filed suit against the congregation in Texas, the district court dismissed the action for lack of

---

3. *Barnstone* is binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

personal jurisdiction, finding that "negotiations . . . carried on through the mail [are] not sufficient to confer jurisdiction if the non-resident party or his agent was not physically present within the State." *Id.* at 289.  Moreover, the district court concluded that Barnstone's preparation of plans and sketches at his office in Houston constituted unilateral part performance.  "It is well settled that the unilateral activity of those whose claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state." *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  On appeal, the Fifth Circuit affirmed the district court for the reasons expressed in the lower court's opinion. *Id.* at 287.

In light of *Barnstone*, this court concludes that personal jurisdiction is lacking over CESI and RB&J in Alabama.[4] In this case, AIE actively solicited CESI's business and traveled to Mississippi for both the November 1996 initial meeting with CESI personnel and the January 1997 presentation of the insurance plan.  As in *Barnstone*, all negotiations were conducted by telephone, by mail, or by face-to-face meeting in the defendants' location.  As in *Barnstone*, substantial work was performed by the plaintiff at AIE's offices in Alabama.  However, this court concludes that such efforts by AIE were unilateral part performance by AIE.  Although CESI may have been aware that AIE would likely develop the CESI insurance plan at AIE's offices in Alabama, the court has been directed to no provision of the agreement that would require performance by AIE in Alabama.  Indeed, given that majority of AIE's work for CESI consisted of written or telephonic correspondence with various insurers, it appears that AIE could have performed that work at any location.

---

4. Indeed, as to RJ&B, it appears that AIE has failed to allege *any* basis for a finding of minimum contacts by RJ&B with this state. Although the court might, in a products liability action, consider whether AIE's injury in Alabama could form the sole basis for jurisdiction over RJ&B in Alabama, no such special circumstances are presented in this case.

4

In one significant aspect, the facts of *Barnstone* and the instant case differ. In *Barnstone*, the only written contract was signed by Barnstone in Texas and submitted to the defendant congregation in Maine. The congregation returned the contract to Barnstone in Texas without signing the agreement. *Id.* Here, draft broker of record letters were provided by AIE to CESI in Mississippi for execution in Mississippi. After signing the letters, CESI personnel sent them via telefacsimile to AIE's offices in Alabama. AIE argues that the broker of record letters establish a contract or contracts between the parties, that such contracts were "executed" upon AIE's receipt of the letters in Alabama, and that, accordingly, Alabama law will govern the court's determination of the validity and scope of the letter contracts. Although the parties agree that interpretation of the letters, to the extent that they signify a contract, would be governed by the common law principle of *lex loci contractus*, the parties disagree as to the application of that principle to the present case.

As succinctly stated by AIE, "[t]he doctrine of *lex loci contractus* provides that 'a contract is governed by the laws of the state where it is made.'" Plaintiff's Response at 6 (citing *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991)). Although plaintiff argues that the contract was "made" in Alabama, when AIE received the broker of record letters via facsimile transmission, this court disagrees. Alabama follows the "mail box rule," which provides that "[w]hen a contract is made . . . , it is complete and takes effect the moment the same is deposited and duly posted in the post office." *J.R. Watkins Co. V. Hill*, 108 So. 244, 245 (Ala. 1926). While the court has found no Alabama case that applies the mail box rule to facsimile transmissions, neither has the court found any Alabama case that adopts the novel rule proposed by plaintiff here. Consistent with the mail box rule, this court concludes that, to the extent the

5

broker of record letters are considered to establish a contract between the parties, that contract was "made" when CESI took the actions necessary to *send* the letters to AIE by facsimile, rather than when CESI *received* the facsimiles. Accordingly, for purposes of the doctrine of *lex loci contractus*, any contract between AIE and CESI would be deemed to have been made in Mississippi.[5]

AIE also argues that, because Alabama adheres to the doctrine of *lex loci delicti*, personal jurisdiction over CESI and RJ&B is proper in Alabama. The doctrine of *lex loci delicti* provides that "an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Fitts v. Minnesota Mining and Mfr. Co.*, 581 So. 2d 819, 820 (Ala. 1991). This court agrees that AIE's tort claims, to the extent they arose in Alabama, would be determined by this court according to Alabama law. However, in light of the court's determination that Mississippi law would govern AIE's contract claims, it appears that either district court would be required to familiarize itself with the laws of both Alabama and Mississippi. Thus, the choice of law is not dispositive in connection with the present motion.

## Conclusion

Based upon its review of the materials submitted by the parties, this court concludes that defendants possess insufficient minimum contacts with the State of Alabama to permit maintenance of this action in this district. Defendants' motion is due to be GRANTED. However, because this motion has been pending in this court for nearly one year, and because both defendants clearly

---

5. The court is aware that the doctrine of *lex loci contractus* may yield where either 1) the parties have agreed that the laws of another jurisdiction shall apply or 2) the contract is to be performed in another jurisdiction. *See J.R. Watkins Co.*, 108 So. at 245. Here, there is no evidence of an express agreement by the parties that their contract should be governed by either Alabama or Mississippi law. Although plaintiff would undoubtedly argue that the parties intended "performance" of the contract to occur at AIE's Alabama offices, the court has already concluded above that AIE's performance could likely have occurred at any location. Moreover, the *Barnstone* court denied Texas jurisdiction under similar facts, at a time when Texas courts applied the doctrine of *lex loci contractus*.

6

are subject to the jurisdiction of the Mississippi courts, this action is due to be TRANSFERRED, pursuant to 28 U.S.C. section 1406(a), to the Southern District of Mississippi, Jackson Division, for further litigation.

Date: March 27, 1998

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Charles L. Robinson
    Mr. John A. Smyth III
    Mr. Paul G. Smith
    Mr. Roy H. Liddell